**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
EASTERN DIVISION**

PATTI PARRISH                                                                             PLAINTIFF

v.                                  No. 2:04CV00190 JLH

METROPOLITAN LIFE INSURANCE COMPANY;
AMERICAN GREETINGS CORPORATION;
GATES MCDONALD & COMPANY; and AMERICAN
GREETINGS CORPORATION WELFARE BENEFITS PLAN           DEFENDANTS

**OPINION AND ORDER**

Patti Parrish commenced this action against Metropolitan Life Insurance Company in the Circuit Court of Woodruff County, Arkansas, seeking recovery of benefits under an employee welfare benefit plan, which is governed by the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001, *et seq.* MetLife removed the action to this Court based on federal question jurisdiction. 28 U.S.C. § 1331.

Nearly three years later, Parrish filed an amended complaint, adding American Greetings Corporation and GatesMcDonald & Company as defendants. All of the parties have moved for summary judgment. Parrish has also moved to remand for further administrative review, to which all of the defendants object.

For reasons that will be explained, summary judgment will be entered in favor of GatesMcDonald and American Greetings because Parrish's claims against them are barred by limitations; Parrish's motion to remand for further administrative review will be denied; and MetLife's motion for summary judgment will be granted because the evidence shows that Parrish was not disabled when her claim was denied.

**I.**

Parrish was employed at the American Greetings factory in McCrory, Arkansas, and participated in the American Greetings Corporation Welfare Benefits Plan. Prior to January 1, 2004, GatesMcDonald was the claims administrator for the disability benefits portion of the plan, which was self-insured by American Greetings. American Greetings was the plan administrator. Parrish made a claim for long-term disability benefits, which GatesMcDonald awarded effective October 23, 2001, under the "mental illness limitation" benefit for 24 months. In an August 25, 2003, letter, GatesMcDonald notified Parrish that her benefits under the 24 month mental illness limitation would end on October 31, 2003. Parrish appealed the notice, citing a diagnosis of Cushing's disease. On September 17, 2003, GatesMcDonald informed Parrish that her appeal was denied after a file review because there was not "adequate current medical documentation to support a medical source for disability." Parrish appealed the decision again. On October 6, 2003, GatesMcDonald sent Parrish a letter stating that there had been a file review and

> there was no documented evidence to support the claim that the Cushing's disease is causing the disability symptoms. The doctor visits for the Cushing's disease appear to be benign and routine. There was no medical documentation to support ongoing disability based on a medical basis.

On April 16, 2004, a lawyer representing Parrish wrote GatesMcDonald and asked for reconsideration of the October 6, 2003, decision. GatesMcDonald replied that effective January 1, 2004, it was no longer "the Long Term Disability carrier for American Greetings" and referred Parrish to MetLife, which was described in the letter as "the Long Term Disability carrier for American Greetings" since January 1, 2004, though in fact MetLife became the claims administrator on January 1, 2004, not the insurance carrier. GatesMcDonald forwarded Parrish's April 23 letter requesting reconsideration to MetLife. MetLife responded on May 12, 2004, stating:

2

> The October 6, 2003 determination constituted completion of the full and fair review required by your clients plan and federal law. Therefore, you have exhausted your clients administrative remedies under the plan and no further appeals will be considered.

Parrish filed her complaint on September 27, 2004, in the Circuit Court of Woodruff County, Arkansas, naming MetLife as the only defendant, although paragraph 6 of the complaint identified GatesMcDonald as the claims administrator for the long-term disability plan that American Greetings offered. Paragraph 5 likewise identified American Greetings as Parrish's employer and the source of her long-term disability policy. MetLife removed the matter to this Court on October 28, 2004. On March 10, 2006, Parrish served GatesMcDonald with a subpoena seeking all documents concerning Parrish, and on April 12, 2006, she served a subpoena on American Greetings seeking all documents concerning Parrish.

On January 22, 2007, MetLife filed a motion to dismiss, stating that it had nothing to do with the decision to discontinue Parrish's benefits and was therefore not a proper party to the action. On May 11, 2007, Parrish filed an amended complaint naming GatesMcDonald, American Greetings, and the plan as defendants. The case is now ripe for decision on the motions for summary judgment.

**II.**

A court should enter summary judgment if the evidence, viewed in the light most favorable to the nonmoving party, demonstrates that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S. Ct. 2505, 2511, 91 L. Ed. 2d 202 (1986); *Cheshewalla v. Rand & Son Constr. Co.*, 415 F.3d 847, 850 (8th Cir. 2005). A genuine issue of material fact exists only if there is sufficient evidence to allow a jury to return a verdict for the nonmoving party. *Anderson*, 477 U.S. at 249, 106 S. Ct. at 2511.

**A.      GatesMcDonald**

The plan provides for a three-year limitations period for filing suit after a claim is denied. The three-year period of limitations is enforceable. *Wilkins v. Hartford Life & Accident Ins. Co.*, 299 F.3d 945, 948 (8th Cir. 2002). GatesMcDonald argues that Parrish's amended complaint adding it as a defendant was filed after the limitations period set out in the plan and therefore Parrish's claims against it are barred. The issue is whether the amended complaint adding GatesMcDonald as a defendant relates back to the date that the initial complaint was filed.

> Rule 15(c) of the Federal Rules of Civil Procedure provides, in pertinent part:
>
> (c) Relation Back of Amendments.
>
> (1) *When an Amendment Relates Back.* An amendment to a pleading relates back to the date of the original pleading when . . .
>
> (B) the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out--or attempted to be set out--in the original pleading; or
> (C) the amendment changes the party or the naming of the party against whom a claim is asserted, if Rule 15(c)(1)(B) is satisfied and if, within the period provided by Rule 4(m) for serving the summons and complaint, the party to be brought in by amendment:
> (i) received such notice of the action that it will not be prejudiced in defending on the merits; and
> (ii) knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity.

FED. R. CIV. P. 15(c). The plaintiff has the burden of proving that the requirements of Rule 15(c) have been met. *Campbell v. Ward*, 792 F. Supp. 1150, 1152-53 (E.D. Mo. 1992). To relate back to the date of the original pleading, an amendment changing the party must first assert "a claim or defense that arose out of conduct, transaction, or occurrence set out – or attempted to be set out – in the original pleading." FED. R. CIV. P. 15(c)(1)(B). That requirement is met in this case and not disputed. Second, the party to be added by the amendment must, within the period provided by

4

Rule 4(m) for serving the summons and complaint, which is 120 days from the date the complaint was filed, have received notice so it will not be prejudiced in defending the action, and have known or should have known that the action would be brought against it but for a mistake concerning the proper party's identity.  *See* FED. R. CIV. P. 15(c)(1)(C).  The newly named party must "receive notice of the suit or become aware of the misidentification in the pleadings within the prescribed period for service of process–120 days after the filing of the original complaint . . . ." *Hill v. United States Postal Service*, 961 F.2d 153, 155 (11th Cir. 1992); *see also White v. Steak & Ale of Little Rock, Inc.*, 839 F. Supp. 23, 25 (E.D. Ark. 1993).

Here, the original complaint was filed on September 27, 2004.  The amended complaint was filed on May 11, 2007, two years and eight months later.  GatesMcDonald was served with a subpoena for documents on March 14, 2006, and had notice of the action then, but that notice was more than 120 days after the filing of the original complaint.

As Parrish points out, courts have recognized that notice under Rule 15(c) may be actual or constructive.  *Singletary v. Pa. Dep't of Corrs.*, 266 F.3d 186, 195-200 (3d Cir. 2001).  Parrish argues that GatesMcDonald and American Greetings had constructive notice under two theories: the "identity of interest" doctrine and the "shared attorney" doctrine.  Generally, two entities have sufficient identity of interest for notice to one to be notice to the other if the two entities are a parent and a wholly owned subsidiary, two companies whose officers are the same or who conduct their business from the same offices, or past and present forms of the same enterprise. 6A CHARLES ALAN WRIGHT, ARTHUR R. MILLER, & MARY KAY KANE, FEDERAL PRACTICE & PROCEDURE § 1499 (2d ed. 1990) ("Identity of interest generally means that the parties are so closely related in their business operations or other activities that the institution of an action against one serves to provide notice of litigation to the other."); *see also Schrader v. Royal Caribbean Cruise Line, Inc.*, 952 F.2d 1008,

1012 (8th Cir. 1991) (recognizing but not applying the identity of interest doctrine). Parrish argues that American Greetings, MetLife, and GatesMcDonald have a sufficient identity of interest so that notice to one is notice to the other because American Greetings is the plan administrator while MetLife and GatesMcDonald are or were claims administrators for the plan. MetLife succeeded GatesMcDonald as claims administrator for the plan, but so far as the record shows that is the only connection between them. There is no identity of interest between them and no reason to believe that notice to one is tantamount to notice to the other.

Parrish also argues that a new defendant has constructive notice of an action when that defendant retains the same attorney as an original defendant and that attorney should have known the new defendant would be added. *Garvin v. City of Philadelphia*, 354 F.3d 215 (3d Cir. 2003); *LaCedra v. Donald W. Wyatt Det. Facility*, 334 F. Supp. 2d 114 (D. R.I. 2004). In *Garvin*, the Third Circuit stated that the fundamental issue was "'whether the attorney's later relationship with the newly named defendant gives rise to the inference that the attorney, *within the 120 day period, had some communication or relationship with, and thus, gave notice of the action to the newly named defendant.*'" *Id.* at 225 (quoting *Singletary*, 266 F.3d at 196-97). MetLife and GatesMcDonald are represented in this action by the same attorneys. However, GatesMcDonald insists that Parrish has not provided any evidence showing that these attorneys provided representation to them within 120 days of September 27, 2004, when the original complaint was filed. They also contend that Parrish did not provide proof of any communication between GatesMcDonald and these attorneys during that time. GatesMcDonald is correct on this point as well. The Court authorized discovery on this issue, and after discovery Parrish has produced no evidence to show that GatesMcDonald had notice, through the attorneys representing MetLife or otherwise, of this action within 120 days after the original complaint was filed.

Even if the Court were to agree with Parrish that GatesMcDonald had constructive notice through the identity of interests doctrine or shared attorney doctrine, Parrish would also be required to show that GatesMcDonald "knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity." FED. R. CIV. P. 15(c)(1)(C)(ii). The amended complaint does not relate back unless there was a mistake concerning the proper party's identity under Rule 15(c). In *Shea v. Esensten*, 208 F.3d 712, 720 (8th Cir. 2000), the Eighth Circuit held that no mistake concerning the proper party's identity occurred when the plaintiff knew of a party's identity but chose not to sue that party at that time. Citing *Shea*, the Western District of Arkansas has distinguished between "mistaken legal judgment" and a mistake concerning the identity of the proper defendant under Rule 15(c). *Smith v. Paladino*, 317 F. Supp. 2d 884, 888 (W.D. Ark. 2004).

Parrish urges a broad interpretation of "mistake" under the rule, but the Eighth Circuit's holding in *Shea* is clear that a mistake concerning the property party's identity does not exist when the plaintiff knows the identity of a party but chooses not to sue that party within the time outlined in the rule. *Shea*, 208 F.3d at 720. Parrish argues that even though she knew GatesMcDonald's identity, she was mistaken about its role in the cause of action, but such a mistake is not a mistake concerning identity and does not meet the requirement of Rule 15(c).

Parrish also seems to argue that not only the notice requirement but also the mistake requirement of Rule 15(c) is met because MetLife, GatesMcDonald, and American Greetings have a "close identity of interests." No Eighth Circuit case explicitly accepts, rejects, or discusses the notion that an identity of interests may substitute for a mistake in identity under Rule 15(c). Parrish relies on *Warren v. Dep't of Army*, 867 F.2d 1156 (8th Cir. 1989) to show that the mistake requirement can be met when two parties have close identity of interests. In *Warren*, the plaintiff

7

named the Department of the Army instead of the Secretary of the Army, a misnomer that had no practical effect on the defense because "the same individual would have received Warren's suit papers regardless of whether the Department or its Secretary were named as defendant" and the "General Counsel of the Department of the Army is one of the enumerated officers within the office of the Secretary of the Army . . . ." *Id.* at 1161.  Similarly, Parrish cites *Jones v. Young*, No. 3:04CV00257 JLH, 2007 WL 2695621 (E.D. Ark. Sept. 10, 2007), for the proposition that when there is an identity of interest between the original defendant and the intended defendant and the other requirements of Rule 15(c) have been met, then the amendment will relate back.  However, in *Jones* the plaintiff named a charitable hospital's insurance carrier as a John Doe defendant pursuant to Ark. Code Ann. § 16-56-125, which tolls the statute of limitation for a tortfeasor whose identity is unknown and who is named as a John Doe defendant.  After discovery, the plaintiff moved pursuant to § 16-56-125(b)(2) to amend the complaint to substitute the real name of the insurance carrier.  Here, Ark. Code Ann. § 16-56-125 was not invoked, nor could it have been because there was no potential defendant whose identity was unknown.  In *Warren* and in *Jones*, there was no doubt but that the proper party had been defending the case from the inception, but that is not the case here.

Here, Parrish's decision not to sue GatesMcDonald was not a mistake concerning the proper party's identity, nor is there reason to believe that GatesMcDonald was aware of this action within 120 days of the filing of the original complaint, so the amended complaint does not relate back to the original complaint.  Because Parrish's claim against GatesMcDonald is barred by limitations, GatesMcDonald is entitled to summary judgment.[1]

---

[1] GatesMcDonald had filed a supplement to its motion for summary judgment as well as a motion for leave to file a reply brief; however, the Court deems those motions moot since

**B.     American Greetings**

American Greetings has also moved for summary judgment. It is undisputed that American Greetings was added as a defendant after the three-year period of limitations expired.[2] The issue, again, is whether the amended complaint adding American Greetings relates back under Rule 15(c). As with GatesMcDonald, the issue is whether, within 120 days of the filing of the original complaint, American Greetings (1) received notice so it will not be prejudiced in defending the action, and (2) knew or should have known that the action would be brought against it but for a mistake concerning the proper party's identity. *See* FED. R. CIV. P. 15(c).

In addition to the identity of interest and shared attorney arguments made with reference to GatesMcDonald, Parrish also argues that the contract requires MetLife to notify American Greetings within 60 days of a lawsuit being filed. Therefore, Parrish argues, American Greetings should be presumed to have had notice within the 120-day time for service. American Greetings has submitted an affidavit stating that it did not become aware of Parrish's action until April 2006 when it received a subpoena for documents and that it had no relationship with MetLife's counsel until then. That affidavit is uncontested. As noted above, the Court permitted discovery on this issue. After discovery, Parrish has not produced evidence that American Greetings had knowledge of this action within 120 days after the original complaint was filed.

Even if American Greetings had actual or constructive notice under one of Parrish's theories, Parrish would also be required to meet the "mistake" requirement under Rule 15(c). American Greetings points to several letters and the plan description itself to point out that Parrish knew the

---

GatesMcDonald is entitled to summary judgment without reviewing those additional documents.

[2] The amended complaint also names the plan, but the parties seem to agree that the claims administrator, the plan administrator, or both must be named as a defendant.

identities and roles of American Greetings and the plan in this litigation, so there was no mistake concerning the identity of the proper party. *See Shea*, 208 F.3d at 720. It is clear from the original complaint that Parrish knew that GatesMcDonald, American Greetings, and MetLife were three separate and distinct entities. Furthermore, the summary plan description identified American Greetings as the plan administrator and provided an address for serving the agent for legal process for the plan. Parrish has submitted an affidavit in which she says that she was mistaken about the role of American Greetings in the action, but that is more of a mistaken legal judgment than a mistake in identity. The amended complaint does not relate back to allow American Greetings to be added as a party. American Greetings is entitled to summary judgment because Parrish's claim against American Greetings is barred by limitations.

**C.    MetLife**

MetLife contends that it is not a proper defendant because it made no decisions regarding Parrish's claim. The proper defendant in an action concerning ERISA benefits is the party that controls administration of the plan. *Layes v. Mead Corp.*, 132 F.3d 1246, 1249 (8th Cir. 1998). MetLife was the claims administrator for the plan when Parrish filed her original complaint on September 27, 2004. Although American Greetings was the plan administrator and should have been named as a defendant, for present purposes the Court will assume without holding that MetLife as the claims administrator would also be a proper party. In 2004, when the original complaint was filed, MetLife had entered into a contract with American Greetings to administer the disability benefits plan. Their contract provided that American Greetings

> has delegated to MetLife and MetLife has agreed to assume the responsibility and discretionary authority for providing the full and fair review of determinations concerning eligibility for Plan Benefits and the interpretation of Plan terms in connection with the appeal of Claims denied in whole or in part, required under ERISA Section 503 and, therefore, MetLife is the Named ERISA Claims Review

10

> Fiduciary. Any determination or interpretation made by MetLife pursuant to this discretionary authority shall be given full force and effect and be binding on the Participant and [American Greetings] unless it is demonstrated that the determination was arbitrary and capricious.

If the Court had remanded the claim for further consideration in 2004, MetLife, as the claims administrator, would have had the responsibility for adjudicating the claim, not GatesMcDonald, which no longer had a contract to administer the claims, and not American Greetings, which had contracted with MetLife for MetLife to perform this function. There is authority for the proposition that MetLife, as claims administrator for the plan, was a proper party in an action to recover benefits as "*de facto* administrator." *See Hall v. LHACO, Inc.*, 140 F.3d 1190, 1195 (8th Cir. 1998) (citing cases adopting and rejecting the *de facto* plan administrator theory and declining to adopt one side or the other); *see also Moore v. Lafayette Life Ins. Co.*, 458 F.3d 416, 438 (6th Cir. 2006). The contract between MetLife and American Greetings plainly contemplates that participants whose claims are denied may sue MetLife and that MetLife will defend those claims. The contract provides that MetLife must give written notice of any such action to American Greetings as soon as practicable but in no event more than 60 days after MetLife receives notice, that MetLife will provide status reports to American Greetings at reasonable intervals, and that MetLife will select its own counsel and pay its own legal fees in defending those cases.[3] Accepting as true the undisputed affidavit from an employee of American Greetings that it had no notice of this action until served with a subpoena in April 2006, MetLife failed to give that notice, but its failure to give notice is irrelevant to the issue of whether it is a proper defendant.

---

[3] The contract also contemplates that participants may sue American Greetings as the plan administrator, in which case American Greetings would give notice to MetLife, provide status reports, select counsel, and pay for the defense.

11

**III.**

Parrish has moved to remand her case for further administrative review. She argues that remand is appropriate because she has not been able to review a complete administrative record of the decision to deny her benefits. The actual administrative record cannot be found. In a December 6, 2006, order after Parrish's first motion to remand, this Court determined that:

> [I]t is clear that every effort has been made by plaintiff, defendant, American Greetings, and GatesMcDonald to locate any documents related to plaintiff's claim. . . . Under these circumstances, the Court is persuaded that the best option is to proceed on the only record currently available and have the parties file their briefs pursuant to the ERISA scheduling order.

Document #31. Thus, at that time, the Court determined that remand was not appropriate. There is no evidence that anything about the circumstances of the case has changed to warrant remand for further administrative review. Parrish has had the opportunity to obtain, and apparently has obtained, all of the records that can be found. There is no reason to believe that additional documents can be found on remand. Furthermore, Parrish has submitted what appears to be a substantial portion of her medical records for the past several years, and everything that she has obtained during discovery in this case, in lieu of the actual administrative record. The Court will assume, for purposes of ruling on the merits, that the claims administrator had all of Parrish's medical records that have been filed in this action and that existed when it denied her claim, even though an argument has been made that the claims administrator had nothing more than Parrish's statements and some unsupported statements of her family physician.

**IV.**

When an administrator has discretion under the long-term disability plan to decide whether a person was disabled, the court reviews the decision under an abuse-of-discretion standard, unless there is evidence of a serious procedural irregularity. *Harden v. American Express Fin. Corp.*, 384

F.3d 498, 500 (8th Cir. 2004).  Here, the summary plan description gives the plan administrator full discretion and authority to interpret the plan, and there is no evidence of a serious procedural irregularity, so the Court will review for abuse of discretion.

When reviewing an administrator's decision, a court will "'consider only the evidence that was before the administrator when the claim was denied.'" *Milone v. Exclusive Healthcare, Inc.*, 244 F.3d 615, 618 (8th Cir. 2001) (quoting *Sahulka v. Lucent Technologies*, 206 F.3d 763, 769 (8th Cir. 2000)).  In light of the fact that the defendants have not been able to produce the actual administrative record, which is due to no fault of Parrish, the Court will consider those records that were in existence when the claims administrator made its decision, even though it cannot be shown that all of those records actually were provided to the claims administrator.

On November 5, 2001, Debra L. Williams, D.O., submitted an Attending Physician's Statement of Disability to GatesMcDonald for Parrish stating that Parrish's primary diagnosis was depression and that her secondary problems were anxiety and vocational stress.  She also wrote that Parrish could not return to work and could not have worked since April 2001.  By letter dated March 21, 2002, GatesMcDonald notified Parrish that her long-term disability claim had been approved under the mental illness limitation benefit, which provided for benefits up to 24 months.  The letter told Parrish that her date of disability was April 23, 2001, and that she had completed the six-month Elimination Period on October 23, 2001.  On August 25, 2003, GatesMcDonald reminded Parrish that her long-term disability claim was approved under the mental illness limitation and that benefits would expire on October 31, 2003.  Parrish appealed, and on September 17, 2003, GatesMcDonald denied the appeal because there was not adequate current medical documentation to support a medical source for disability.  Parrish appealed again, arguing that her disability was caused by Cushing's disease.  On October 6, 2003, GatesMcDonald wrote Parrish and stated that

there was no documented evidence to support the claim that Cushing's disease was causing disability and that there was no medical documentation to support ongoing disability. The letter concluded, "This is written notification of our final decision after the appeal process."

Sometime in 2002, Parrish was diagnosed as having Cushing's syndrome.[4] She was seen by her family doctor, Dr. Fred Wilson, and by an endocrinologist in Little Rock, Dr. Timothy Boehm. In August 2002, she was referred to an endocrinologist in Milwaukee, Wisconsin, Dr. James W. Findling. In a report of an examination conducted on August 20, 2002, Dr. Findling stated that Parrish was "a very cushiongoid appearing 47-year old woman" and that she had "unequivocal biochemical evidence of endogenous hypercortisolism due to adrenocorticotropic hormone-secreting neoplasm. This most likely represents Cushing disease, however occult ectopic adrenocorticotropic hormone-secreting tumor will be excluded." The report said that "Bilateral simultaneous inferior petrosal sinus adrenocorticotropic hormone sampling with CRH[5] stimulation will be performed today." On August 21, Dr. Findling reported, "There does not appear to be any pituitary gradient either before or after CRH administration." The report suggested a search for tumors, which was done, and no tumor was found.

Parrish saw Dr. Findling again in November 2002, and he wrote that he found "no evidence of pituitary ACTH gradient despite a nice peripheral ACTH response to CRH." Parrish's "clinical presentation and biochemistry is most consistent with pituitary ACTH-dependent Cushing's

---

[4] Cushing's syndrome is "a complex of symptoms caused by hyperadrenocorticism due either to a neoplasm of the adrenal cortex or adenohypophysis, or to excessive intake of glucocorticoids . . . . When secondary to excessive secretion of corticotropin (ACTH) by a pituitary adenoma, it is known as *Cushing's disease*. DORLAND'S ILLUSTRATED MEDICAL DICTIONARY 1815 (30th Ed. 2003).

[5] Corticotropin-releasing hormone. DORLAND'S 2100.

syndrome," but the clinic had never had a false negative before.  He then referred Parrish to an endocrinologist in Massachusetts, Dr. Brooke Swearingen.

In December 2002, Parrish underwent pituitary surgery in Massachusetts.  Thereafter, she began to improve.  On January 15, 2003, Dr. Findling reported that Parrish had lost weight, had more energy and less nocturnia, and had normal cortisol levels.  He wrote that Parrish appeared to be having a remission of her hypercortisolism following the pituitary surgery.

In March 2003, Parrish was seen by an endocrinologist at UAMS, Dr. Debra L. Simmons, who reported that Parrish "most likely had pituitary Cushing's disease, which has markedly improved after the transsphenoidal pituitary and resection in December."

On April 25, 2003, Dr. Findling wrote to Dr. Swearingen:

> I wanted to give you an update on Patricia Parrish in regards to her biochemical testing since surgery at your institution.  I have actually not seen her but have talked to her several times.  It sounds as if she has had a nice improvement in her hypercortisolism with a 25-30 pounds weight loss and resolution of many of these signs and symptoms of Cushing syndrome.  In addition, there has been a normalization of urine-free cortisol.
>
> Interestingly, there has been a marked reduction in late night salivary cortisol secretion.  Initially her levels late at night ranged in the 12-70 nmol/l range (normal 0.3-4.3).  However, since surgery, her salivary cortisol levels have been slightly elevated and intermittently normal.  Salivary cortisol levels have ranged between about 3.2-5.0 nmol/l.  We have gained enormous experience with this new and very sensitive assessment of pituitary adrenal function.  In our experience, salivary cortisol levels above 3 nmol/l are quite unusual on a consistent basis in normal subjects.
>
> Nonetheless, I am gratified by the improvement she has made clinically.  These late night salivary cortisols probably portend a not-so-good prognosis, and it seems likely that she will have a recurrence.  In light of the timing, it would seem very likely that the pituitary surgery did have a great deal to do with her clinical improvement and that this was not just a spontaneous remission of Cushing's.

Other than an attending physician's statement from Dr. Wilson and a report from an ear, nose, and throat doctor regarding sinusitis, Dr. Findling's April 15 letter is the last medical record before the

decision was made in August or September to terminate Parrish's benefits due to the expiration of the 24-month period for mental illness. Dr. Findling's letter indicates, as did his letter in January, that Parrish's Cushing's syndrome had gone into remission. The letter stated a concern that the Cushing's syndrome might recur, but there was nothing to show that at that time Parrish was disabled.

Coincidentally, on October 6, 2003, the day that the claims administrator sent the letter denying Parrish's final appeal, Parrish again saw Dr. Findling, who wrote:

> In December 2002, she underwent transsphenoidal pituitary microsurgery at Massachusetts General Hospital. A discrete pituitary adenoma was not seen or resected and nothing found histologically. Nonetheless, the patient had dramatic response to surgery. She has not developed adrenal insufficiency but has had significant reduction of cortisol secretion to essential normal ranges, had persistently normal urine free cortisols since the pituitary surgery. Interestingly, salivary cortisol levels have been in the high-normal range since surgery. Most recent levels done in April of 2003 were 5.0 and 3.9 nmol/L and in June 4.4 and 3.7 nmol/L (normal range is 0.3-4.3); patients with mild Cushing may often have late night salivary cortisols above 3 nmol/L.
>
> * * *
>
> Since the surgery, her signs and symptoms of Cushing syndrome have almost completely resolved, dramatic improvements in her neuropsychiatric well being. Her weakness is resolved. Her bruising has improved. She has lost 40 pounds since surgery. In fact, looking at her today, it is hard to believe it is the same person that I saw last August.
>
> * * *
>
> REVIEW OF SYSTEMS:
> CONSTITUTIONAL: Has no appetite change or fever.
> NEUROLOGICAL: Denies any strokes, seizures or headaches.
> EYES: No diplopia or blurred vision.
> EARS, NOSE, THROAT: No trouble swallowing or breathing or change in her voice.
> CARDIOVASCULAR: Has occasional palpitations. Denies any chest pain or claudication.
> PULMONARY: Denies any dyspnea, cough, or wheezing.
> GASTROINTESTINAL: No change in bowel habits, nausea, vomiting, dyspepsia, or melena.
> GENITOURINARY: No sexual dysfunction.

16

    MUSCULOSKELETAL:  Has some pain in her thumbs at times, probably arthritis. Denies any fractures or weakness in joints.
    SKIN/RASH:  Denies any rash, change in pigmentation, or easy bruising.
    PSYCHIATRIC:  Still has some slight depression.
    GENERAL ENDOCRINE:  Some sleep disturbance. Denies any polyuria, or polydipsia.
    HEMATOLOGY:  Denies any anemia.
    GYNECOLOGICAL:  Last Pap smear and mammogram July 2003.

    PHYSICAL EXAMINATION:
    GENERAL:  Non-cushingoid-appearing 48-year-old woman.
    VITAL SIGNS:  Blood pressure 122/78, pulse 78, height 65.9 inches, weight 131 pounds.
    SKIN:  Showed no evidence of acanthosis negricans or vitiligo.
    HEENT:  No lid lag or proptosis. EOMs and visual fields intact. Funduscopic examination unremarkable.
    NECK:  There were no palpable thyroid nodules. No carotid bruits.
    CHEST:  Clear to auscultation and percussion.
    CARDIOVASCULAR:  Normal S1, S2. Regular rhythm without murmur or gallop.
    NEUROLOGIC:  No tremor. Good strength and coordination. Normal deep tendon reflexes.
    EXTREMITIES:  Showed no edema.

    ASSESSMENT:
    1.  Cushing disease.  This patient has had a dramatic clinical improvement of endogenous hypercortisolism following transsphenoidal pituitary surgery in December 2002.  She has normal urine free cortisols and late night salivary cortisols have gone into the high-normal or slightly above-normal range.  There is no question that this is a clinical remission.  The only issue is whether it will be sustained.
    2.  Osteoporosis.  Patient has metabolic bone disease associated with endogenous hypercortisolism.

This report is set out at length because it confirms what Dr. Findling had reported in January and April 2003, which was that Parrish's Cushing's syndrome went into remission after the December 2002 surgery.  Nothing in Parrish's medical records in 2003 shows that she was disabled at that time.  Taking into account all of Parrish's medical records through October 6, 2003, when the claims administrator denied her second appeal, the decision to deny Parrish's claim appears to have been correct.  Whether these records are reviewed for abuse of discretion or whether they are reviewed *de novo*, the result is the same: Parrish was not disabled at that time.  The claims administrator could

not have had Dr. Findling's letter of October 6, 2003, but disregarding that letter, there was still insufficient evidence to show that Parrish was disabled at that time.

Parrish's problem, and it is one for which the Court has sympathy, is that she apparently had a recurrence of the Cushing's syndrome in 2004. As noted above, on April 16, 2004, a lawyer representing Parrish wrote GatesMcDonald and asked for reconsideration of the denial of her claim. He enclosed a report from yet another endocrinologist, Dr. Richard Sandler, from Springdale, Arkansas, documenting a recurrence of the Cushing syndrome. It was too late. Parrish's claim had been adjudicated in August and September of 2003. Her second appeal was denied on October 6, 2003. The letter of October 6, 2003, says, "This is written notification of our final decision after the appeal process." The summary plan description provides for an appeal to the plan administrator, which was American Greetings, but such an appeal must be made within 180 days of the denial. It would be fair to regard the April 16, 2004, letter as a letter to the plan administrator, but it was still too late because it was more than 180 days after the October 6, 2003, final denial of Parrish's claim by the claims administrator.

From a review of all of the records that Parrish has submitted, including records that Parrish has submitted to the Court but that the claims administrator may not have had, the Court cannot say that there is evidence to show Parrish was disabled in September and October of 2003. She had Cushing's syndrome, but it was in remission during 2003. Nothing in her medical records in 2003 shows that she was unable to work when her disability benefits were terminated. Parrish's long-term disability benefits had been approved under the mental illness benefit with a 24-month limitation. When the 24 months expired, she had to show that she had a physical condition that disabled her from working, but she could not show that she was disabled at that time due to a physical condition. The claims administrator correctly denied her claim and correctly denied her appeal. Her Cushing's

syndrome recurred in 2004 and she then asked for reconsideration, but the request came too late. It is the duty of the Court to enter summary judgment in favor of MetLife.

## CONCLUSION

For the reasons listed above, GatesMcDonald and American Greetings are entitled to summary judgment because Parrish's claims against them are barred by limitations.  For purposes of ruling on summary judgment, the Court assumes MetLife is properly named as a defendant because it was the claims administrator for the plan when Parrish's original complaint was filed in 2004.  Parrish's motion to remand for further administrative review is denied.  The decision to deny Parrish's long-term disability claim is affirmed.  Parrish's complaint is dismissed with prejudice.

IT IS SO ORDERED this 20th day of June, 2008.

*J. Leon Holmes*

J. LEON HOLMES
UNITED STATES DISTRICT JUDGE